*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0161

KAT, LLC, T/A CLOUD RESTAURANT & LOUNGE SPORTS BAR, PETITIONER,

v.

DISTRICT OF COLUMBIA
ALCOHOLIC BEVERAGE CONTROL BOARD, RESPONDENT.

Petition for Review of an Order of the
District of Columbia Alcoholic Beverage Control Board
(No. 22-251-00014)

(Submitted March 12, 2024                    Decided June 27, 2024)

*Richard J. Bianco* was on the brief for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, with whom *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *James C. McKay, Jr.*, were on the brief, for respondent.

Before MCLEESE and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge*.

WASHINGTON, *Senior Judge*:   Petitioner Kat, LLC challenges the D.C. Alcoholic Beverage Control Board's calculation of the penalty for petitioner's violations of the Alcoholic Beverage Regulations during an April 3, 2022, incident at petitioner's restaurant.   Specifically, petitioner contends that an Offer in Compromise ("OIC") it entered into to resolve a previous violation was procedurally

deficient and should not be considered a prior primary tier violation when calculating enhanced penalties under 23 D.C.M.R. § 801.1(b). Because we conclude that the OIC was not procedurally deficient and that the Board properly considered it a primary tier violation in its calculation of enhanced penalties, we affirm the Board's decision.

## I.     Background & Procedural History

Petitioner Kat, LLC, which does business as Cloud Restaurant & Lounge Sports Bar, is a restaurant and bar in Washington, D.C. holding a license allowing it to sell beer, wine, and spirits. Two incidents occurred at Cloud that are relevant to this appeal.

The first is a March 14, 2022 incident involving a fatal stabbing. The Board issued petitioner a Notice of Summary Suspension for violations of D.C. Code §§ 25-823(a)(5)-(a)(6) and 25-403(e)(3)(g), noting that the violations represented "a method of operation that places the public in imminent danger of further acts of violence." As a result of this summary suspension, petitioner was prohibited from operating its establishment but could challenge the determination at a hearing. *See* D.C. Code § 25-826. Rather than challenge the summary suspension, petitioner entered into an OIC with the District that resolved the matter and permitted petitioner to reopen its restaurant. Among other requirements, the OIC required petitioner to

pay a fine, noting that, "[p]rior to the Board lifting the summary suspension of the ABC License, [petitioner] shall pay a fine in the amount of $2,000 for violations of their security plan, provided however that by entering into this Offer in Compromise, [petitioner] does not admit liability for the violations." It also noted that petitioner was forgoing its right to further litigation. The Board approved the OIC at a hearing on March 23, 2022. In summarizing the OIC, the Board noted that it required petitioner to "pay a fine of $2,000 for violating D.C. Official Code § 25-823(a)(6) (primary tier violation) without admitting guilt." Petitioner did not challenge the Board's order accepting the OIC.

The second incident occurred on April 3, 2022, and is the subject of the present appeal. On that night, a fight broke out at the petitioner's establishment, during a time when there were fifty-one more patrons in the restaurant than permitted by the establishment's occupancy limit. After a show-cause hearing on November 9, 2022, the Board found that petitioner violated D.C. Code § 25-823(a)(2), by allowing the establishment to be used for "unlawful or disorderly purpose[s]" and D.C. Code § 25-762(b)(1), for permitting too many patrons inside the establishment, to which petitioner admitted.

In calculating the penalty for the violation, the Board relied on the primary tier penalty schedule, 23 D.C.M.R. § 801.1(b). Despite petitioner's arguments to the

contrary, the Board concluded that the earlier, March 14, 2022 incident resolved via OIC constituted a primary tier violation. Therefore, the Board determined that the present violations constituted second level primary tier violations, with the first being the earlier violation that was resolved by the OIC. The Board imposed the minimum fine for such offenses under the primary tier penalty schedule, which was $2,000 for each of the two offenses.

Petitioner appeals the Board's decision that the March 14, 2022 OIC was a primary tier violation for the purpose of the primary tier penalty schedule.

## II. Standard of Review

"We review the legal conclusions of an agency de novo." *Levelle, Inc. v. D.C. Alcoholic Beverage Control Bd.*, 924 A.2d 1030, 1035 (D.C. 2007). "This court will accord considerable weight to an agency's construction of the statutes and regulations that it administers where the meaning of the language is not clear on its face; however, the judiciary is the final authority on issues of statutory construction." *Id.* at 1035-36 (internal quotation marks omitted).

## III. Analysis

Petitioner raises two challenges to the Board's decision on appeal: (A) that the Board did not follow the proper procedure in issuing the earlier OIC; and (B) that

the Board improperly considered the OIC related to the prior violation for purposes of the graduated penalty schedule in the current case.

## A. The OIC Procedures

Petitioner alleges that, because it did not receive a show cause order, the Board did not go through the proper procedure to find it in violation. Petitioner points to D.C. Code § 25-447(c), which requires that:

> Within 30 days of receiving evidence supporting a reasonable belief that any licensee or permittee is in violation of the provision of this title or the regulations issued under it, the Board shall order the licensee or permittee, by personal service or certified mail, to appear before the Board not less than 30 days thereafter to show cause why the license or permit should not be revoked or suspended, or the licensee or permittee penalized, as provided by subchapter II of Chapter 8. The notice shall state the time and place set by the Board for the hearing.

However, the proceedings that led to the OIC were pursuant to the summary suspension statute, D.C. Code § 25-826(a), which gives the Board the power to summarily suspend a license upon a determination that the "licensee present[s] an imminent danger to the health and safety of the public." The Board notified petitioner of its summary suspension on March 18, 2022, and the OIC was submitted to the Board on March 23, 2022. Therefore, because the incident occurred on March 14, 2022, and the OIC was approved on March 23, 2022, the Board was never required to provide notice of a show cause hearing under Section 25-447(c), as such

notice is only required "[w]ithin 30 days of receiving evidence" of the incident. D.C. Code § 25-447(c). Rather, the parties agreed that the OIC "waive[d] further litigation" and that the petitioner would "pay a fine of $2,000 for violating D.C. Official Code § 25-823(a)(6)."

Petitioner suggests that a show cause order is required before the Board can approve an OIC, pointing to statutory language stating that "[a]n offer-in-compromise *may* be presented to the Board at the show cause status hearing or show cause hearing." D.C. Code § 25-448(b) (emphasis added). Here, although Petitioner was charged under the summary suspension statute, it voluntarily entered into an OIC to resolve the charges under the show cause regulations, essentially stipulating to the charges that would have been brought at a show cause hearing.[1] Those regulations confirm that "[a]n offer in compromise and settlement may be tendered to the Board at any time prior to the issuance of a decision by the Board on the contested matter." 23 D.C.M.R. § 1611.5 ("Show Cause Hearings"). As a result, once the OIC was accepted by the Board, it "resolve[d] the charges brought by the District of Columbia against the licensee," D.C. Code § 25-448(a), meaning that the

---

[1] The OIC provides that it was "authorized by 23 DCMR § 1604.5." This was apparently an error, as Section 1604.5, which addressed OICs, was re-designated to Section 1611.5 in 2016. *See* 63 D.C. Reg. 3727-3740 (2016). 23 D.C.M.R. § 1604.5 did not exist when the OIC was agreed to.

show cause hearing was no longer required, and the terms of the OIC controlled, *see id.* § 25-446(a).

For these reasons, we conclude that there was no procedural deficiency in the March 2022 OIC and therefore that the OIC was proper for the Board to consider in the calculation of penalties in the current case.

## B. The Board's Consideration of the OIC

Petitioner contends that, even assuming the OIC was procedurally proper, the Board could not consider it as a primary tier violation because (1) the proceedings did not include a factual record; and (2) the OIC specified that petitioner accepted its terms without admitting liability. We disagree with both arguments and conclude that the Board properly considered the past primary violation contained in the OIC.

First, petitioner contends that the OIC is not a violation "because it lacks the fundamental elements necessary for an adverse decision," specifically, a factual record. For this proposition petitioner relies on a provision of the D.C. Administrative Procedure Act ("APA") that requires decisions in contested cases to "be in writing, and . . . be accompanied by findings of fact and conclusions of law." D.C. Code § 2-509(e). However, petitioner overlooks that the same section of the APA provides that, "[u]nless otherwise required by law, other than this subchapter,

any contested case may be disposed of by stipulation, agreed settlement, consent order, or default." *Id.* § 2-509(a). An OIC is such a settlement.

Moreover, as the Board wrote in its decision, the relevant regulations firmly establish that an OIC counts as a violation when calculating past violations, regardless of whether a factual record is present. The regulations specify that "[t]he computation of violation history shall only include prior adjudicated cases." 23 D.C.M.R. § 808.3. "Prior Adjudication" is defined as "[v]iolations that have been adjudicated and can therefore be counted for purposes of computing violation history." 23 D.C.M.R. § 199. An OIC is an adjudicated violation because it is defined as a settlement: "A negotiation between the Government and the Respondent to settle the charges brought by the Government for those violations committed by the Respondent in the instant case." *Id.* (definition of OIC). This interpretation is confirmed by 23 D.C.M.R. § 808.4(d), which states, for the purpose of determining the timelines of violations, "[t]he date of adjudication" includes "[t]he date an offer-in compromise was accepted by the Board." Therefore, we conclude that petitioner has not shown that the Board erred by considering the OIC as a past violation.

Second, petitioner contends that, because it did "not admit liability" in the OIC, there was no "substantial evidence" to support enhancing the penalty.

However, the penalty schedule regulations only refer to "violation[s]," not "liability," *see* 23 D.C.M.R. § 801.1, and a statement in the OIC that the petitioner did not admit liability does not indicate that there was no violation of the law. Rather, the OIC stated that petitioner "shall pay a fine in the amount of $2,000 *for violations of their security plan*," (emphasis added) and the Board's order accepting the OIC noted that the OIC required petitioner to "pay a fine of $2,000 *for violating* D.C. Official Code § 25-823(a)(6) (primary tier violation) without admitting guilt."[2] (emphasis added). In sum, petitioner admitted a violation of D.C. Code § 25-823(a)(6), and the Board's order accepting the OIC, which petitioner did not contest, clarified that the violation was a primary tier violation. Whether the petitioner admitted "liability" for that violation has no impact on whether a violation occurred.[3] Therefore, the Board properly considered the OIC as a past violation in calculating the penalty.

---

[2] The Board's order accepting the OIC apparently erroneously stated the petitioner accepted the OIC "without admitting guilt" rather than "without admitting liability." Because the question is whether petitioner admitted a violation, and the order clearly states that petitioner did so, any distinction between "guilt" and "liability" does not matter.

[3] Because we conclude that the admission of a violation in the OIC is sufficient for the penalty calculation at issue, we need not consider the District's arguments that the OIC is analogous to an *Alford* plea.

**IV.    Conclusion**

For the foregoing reasons, the decision of the D.C. Alcoholic Beverage Control Board is affirmed.

*So ordered*.